# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALLEN BLAND,

                    Petitioner,

v.                                                    Case No. 20-CV-36-JPS

RANDALL HEPP,

                                                      **ORDER**

                    Respondent.

## 1.    INTRODUCTION

Following trial in Milwaukee County Circuit Court, a jury convicted Allen Bland ("Petitioner" or "Bland") of first-degree sexual assault of a child under the age of twelve. ECF No. 1.[1] The Wisconsin Court of Appeals affirmed Petitioner's conviction on April 10, 2018. *State v. Bland*, 915 N.W.2d 730 (Wis. Ct. App. 2018). Petitioner appealed to the Wisconsin Supreme Court on the same three claims; the court denied his petition for review on October 9, 2018. ECF No. 1 at 3; *State v. Bland*, 921 N.W.2d 503 (Wis. 2018).

Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. In his petition, Petitioner raises three grounds for relief: (1) that he was denied his statutory and constitutional rights to be present during and to participate in the selection of the jury; (2) that his trial counsel provided ineffective assistance of counsel by failing to allow Bland to be present during the courtroom voir dire of Juror No. 3; and (3) that his trial counsel provided ineffective assistance of counsel by failing to adequately

---

[1] *See also Wisconsin v. Bland*, 2014CF002474 (Milwaukee Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov (last visited Mar. 16, 2023).

argue a "critical challenge to victim's credibility." ECF No. 1 at 6–8. On January 31, 2022, the Court screened the petition, determined that Petitioner had properly exhausted and raised three grounds for relief, and set a briefing schedule. ECF No. 6.

On March 2, 2022, Respondent Randall Hepp ("Respondent") filed his answer.[2] ECF No. 10. Petitioner's opening brief was therefore initially due on May 2, 2022. *See* ECF No. 6. Thereafter, Petitioner requested, and the Court granted, multiple extensions to allow Petitioner additional time to file his brief in support of the petition. ECF Nos. 11, 12, 13, 14, 15, 16. Finally, on November 7, 2022, the Court granted Petitioner a final extension to file his brief. ECF No. 18. The Court warned Plaintiff that no further extensions would be granted and ordered Respondent to file a brief in opposition to the petition on a date certain if Petitioner failed to file his brief in support. *Id.* On February 10, 2023, the Court granted Respondent's motion for an extension to file a brief in opposition. *Id.* The Court also set a date certain, March 16, 2023, for Petitioner to file a reply, if any. *Id.* On February 13, 2023, Respondent filed a brief in opposition to the petition. ECF No. 23.

On March 21, 2023, Petitioner filed a motion for an extension of time to file a reply. ECF No. 24. Petitioner seeks an additional sixty (60) days to file a brief. *Id.* The Court will deny Petitioner's request to extend the deadline. The Court has granted Petitioner numerous requests to file a brief

---

[2]In this filing, Respondent notified the Court that Randall Hepp had replaced Brian Foster as Warden of Waupun Correctional Institution. The Court has therefore substituted Randall Hepp as the proper Respondent. *See* Fed. R. Civ. P. 25(d); *see also* Rule 2(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("If the petitioner is currently in custody under a state court judgment, the petition must name as respondent the state officer who has custody.").

in support of his petition and this case has now been pending for over three years. The Court has carefully reviewed Respondent's submissions and the underlying record, and finds that any additional extension of time would be futile. For the reasons explained below, the Court determines that the petition, ECF No. 1, must be denied.

## 2. RELEVANT BACKGROUND[3]

### 2.1 Separate Voir Dire of Juror No. 3

Following jury selection, after the parties had left for the day, the trial court was informed that Juror No. 3 had expressed concern to court staff about whether he was eligible to serve on the jury. ECF No. 10-7 at 8. The following morning, before the jury and Petitioner were brought in, Juror No. 3 was brought into the courtroom for further questioning on the record with both counsel present. *Id.* Trial counsel waived Petitioner's appearance. *Id.* In answer to the questions of the trial court and both counsel, Juror No. 3 stated that he had once been convicted of taking a car without the owner's consent and once been convicted of a firearms charge. *Id.* He further stated that these experiences would not cause him to be biased in deciding Petitioner's case. *Id.*

After both counsel and the trial court questioned Juror No. 3 without Petitioner being present, Juror No. 3 left the courtroom and Petitioner was brought into the courtroom wearing street clothes and in shackles because he was in custody. *Id.* The trial court explained what had happened, telling Petitioner that the court did not have him brought in because it would have been apparent to the juror that he was in custody, which was potentially

---

[3]The majority of the underlying facts in this Order come from the Wisconsin Court of Appeals' recitation. ECF No. 10-7; *Bland*, 915 N.W.2d 730.

prejudicial to Petitioner. *Id.* The trial court and trial counsel discussed, in Petitioner's presence, what to do about Juror No. 3's disclosure of his prior convictions. *Id.* One potential solution suggested was to wait until the end of the trial and then designate Juror No. 3 as the alternate. *Id.* at 8–9. The trial court responded that it was "a good proposal," that Juror No. 3 would be left on the panel for the time being, and that the parties would "revisit the issue prior to selecting the alternate." *Id.* at 9. The trial court confirmed and said: "Mr. Bland, is that satisfactory for you?" and he answered, "Yes." *Id.* The trial court continued, noting that if the defense's position changed, "there is sufficient time certainly before we select an alternate for the [c]ourt to hear from you. *Id.* All right?" Petitioner responded, "Okay." *Id.* Defense counsel advised the court, on the record and in Petitioner's presence, that he had talked to Petitioner about the issue regarding Juror No. 3 before and after the questioning of Juror No. 3 and Petitioner had agreed to the proposal of waiting until later in the trial to determine whether Juror No. 3 would be the alternate or not. *Id.*

### 2.2 The Trial Testimony of the Child

At Petitioner's jury trial, the child, T., testified that Petitioner had performed sex acts on her from the time she was ten. *Id.* at 3. She testified that he put his mouth on her vagina and nipples; put his finger in her vagina; and put a vibrator on and inside her vagina. *Id.* T. also testified that Petitioner forced her to perform sex acts on his penis using her hands and her mouth "more than one time." *Id.* In addition to the physical acts, T. testified that Petitioner told her to send naked pictures of her "private parts and [her] nipples" to his cell phone. *Id.* T. testified that if she refused to send the pictures or did not allow him to touch her, she would get "a whooping."

She testified that Petitioner also texted her pictures of "naked people" who were "humping each other." *Id.*

Trial testimony established that Petitioner had moved to Illinois in 2013, and T. had spent part of the summer of 2013 with him. *Id.* In spring of 2014, Petitioner moved back to Milwaukee and T. began visiting "every weekend." *Id.* T. testified about a specific incident that occurred in June 2014 in Petitioner's bedroom during one of T.'s weekend visits. *Id.* She testified that Petitioner told her to take her clothes off. *Id.* When the prosecutor asked T. why he did that, T. answered that Petitioner told her he wanted to see "how the hole felt. *Id.* That's where he put his finger in, where I pee." *Id.* She testified that when Petitioner put his finger in her vagina, she "started crying because it really hurted." *Id.* She testified that her younger brother was wearing headphones and playing on a cell phone on the floor in the room when that happened but that he had not seen what Petitioner did. *Id.*

T. testified that she texted with Petitioner often. *Id.* She testified that he had sent messages promising that she "wouldn't have to do it anymore" after she turned thirteen, and she understood "it" to mean "[i]nappropriate stuff." *Id.* at 3–4. She explained in her testimony that "eating you out" meant "put[ting] his mouth on my private part," and "the mouth thing" meant "put[ting] my mouth on his private part." *Id.* at 4. T. testified that Petitioner sometimes told her that she would "owe him," and this meant that she would "have to do the mouth on the private part things," and it happened when she would get "in trouble." *Id.* On redirect, T. testified that Petitioner had at some point used "whoopings" as punishment, but he stopped doing so; instead of a "whooping," he would make her put her mouth on his penis. *Id.*

Case 2:20-cv-00036-JPS   Filed 03/28/23   Page 5 of 24   Document 25

### 2.3 Trial Testimony about Text Messages Found on T.'s Phone

T.'s mother, M., testified that a few days after that June 2014 visit, she needed to use T.'s cell phone because her own phone was not working. *Id.* While she was making a call on T.'s cell phone, she saw a text message arrive from a number identified in T.'s phone as "Daddy." *Id.* The text message she saw said, "Baby hold on now. You said it felt good just as long as my beard didn't touch it." *Id.* M. testified that her first thought was that the text must have been intended for someone else, but she testified that as she looked through other messages, she "realized these text messages [were] for [T.]" *Id.* After she read a second text from Petitioner's phone—this one said, "I see you're cool with the mouth thing as the only punishment, right?"—she called Petitioner from T.'s phone. *Id.* She testified that Petitioner answered, and after she confronted him about the texts, he "started to apologize." She testified that he claimed that "it only happened one time," that he had "apologized to his daughter," and that "he was drunk." *Id.* She testified that he was "pleading with [her] not to call the police." *Id.* She testified that she immediately took T. to the police. *Id.*

The texts T.'s mother found were among those ultimately recovered from T.'s phone. *Id.* at 5. A detective who works as a forensic examiner with the Milwaukee Police Department examined T.'s cell phone and Petitioner's cell phone. *Id.* The detective testified at trial that he recovered relevant evidence from both cell phones; however, he was able to recover only existing items—anything that had been deleted from the two phones before he examined them was unrecoverable. *Id.* Among the texts recovered from T.'s phone and entered into evidence was a text exchange at about 3 p.m. on June 10, 2014. *Id.* The text conversation had started with texts that showed that they were from Petitioner's phone, asking T., "What's been

gone on wit the boys?" and her response was that nothing was going on. *Id.* The conversation continued with Petitioner telling her that he wanted her to be wild around him—"I be wantin you to be wild, baby, cuz I know that's how you are when grownups ain't around"—and telling her that he would continue with the sexual acts until she turned thirteen, using the "mouth thing" as the only punishment. *Id.* At that point, the records showed that the text conversation was interrupted and several messages from Petitioner went unanswered. *Id.* However, at about 6:00 p.m., the exchange resumed. *Id.*

The detective testified that all of the above-mentioned messages were retrieved from T.'s cell phone and showed that they had been sent from Petitioner's number, but none of them remained on Petitioner's cell phone. *Id.* The detective did retrieve multiple undeleted messages that were on both Petitioner's phone (as sent messages) and T.'s phone (as received messages) on June 12, 2014. *Id.* In these messages, directed at T.'s mother, Petitioner denied sexual contact with T. *Id.* He claimed that he had gone through T.'s phone and found messages from a boy about sex. *Id.* He claimed that the explicit texts he had sent her had been his attempt to "handle it" and "scare her out of it." *Id.*

Petitioner testified at trial. *Id.* at 6. He testified that his relationship with T. was "[w]onderful, just like with all my other kids." *Id.* He described that on weekends he typically had his kids over, and when he had the majority of his twelve kids over at one time, he would take them to a park or an indoor playground to play. *Id.* He denied ever having sexual contact with T. *Id.* Petitioner never denied sending the texts from his phone that were found on T.'s phone. *Id.* He tried to characterize the texts as an attempt to re-enact the sexting messages he claimed to have seen on her phone's Kik

Messenger app between her and a specific thirteen-year-old boy. *Id.* He stated: "I was going into what her and the boy was—I was basically trying to like do what they did, see how it feel. Look how you making me feel, too.... That was me going along with what the boy said and I just said it to her." *Id.*

### 2.4 Alternate Juror Selection

At the close of testimony, outside of the jury's, but in Petitioner's presence, the trial court asked counsel to state their positions on deliberately picking an alternate or leaving it to chance. *Id.* at 9–10. The State asked that Juror No. 14 be used as the alternate. *Id.* at 10. Petitioner's counsel asked for a pause to confer with his client, then told the trial court that he agreed with the State and that he had just discussed the matter with Petitioner "and he concurs with my thoughts also." *Id.* Comparing Juror No. 14 to Juror No. 3, the non-disclosing juror, defense counsel stated, "My client agrees with me also that the sleeping juror, you know, is a bigger problem. And he agrees with me and with the [S]tate that that should be – he should be the alternate." *Id.* The trial court directly addressed Petitioner about this issue: "And Mr. Bland, that's correct, right?" and he responded, "Yes." Juror No. 14 was accordingly announced as the alternate and was excused before the jury began its deliberations. *Id.*

### 2.5 Procedural History

The jury returned a verdict of not guilty on the charge of repeated sexual assault of a child, and a verdict of guilty on the charge of first-degree sexual assault of a child under twelve years old. *Id.*

Petitioner filed a motion for postconviction relief arguing that his constitutional and statutory rights to be present were violated when he was not personally present during the individual questioning of Juror No. 1 and

Juror No. 3 and when he was not given an opportunity to question Juror No. 14. *Id; see also* ECF No. 10-3. He further argued that trial counsel rendered constitutionally ineffective assistance by failing to require his presence at those times, by failing to require a voir dire in his presence of Juror No. 14, by failing to move for mistrial on the grounds that both Juror No. 3 and Juror No. 14 were disqualified to serve, and by failing to emphasize in closing that T.'s testimony about the June 2014 sexual assault, the basis of count one, was "wholly incredible." ECF No. 10-7 at 10. On March 17, 2017, the trial court denied his motion for postconviction relief without a hearing. *Id.* at 11; ECF No 10-4.

On appeal, Petitioner sought a new trial on the grounds that his constitutional and statutory rights were violated. ECF No. 10-7 at 2. In the alternative, he sought an evidentiary hearing on his claims: (1) that trial counsel failed to question Juror No. 14 about his attentiveness during testimony; and (2) that trial counsel failed to assert Petitioner's constitutional and statutory right to be present during the individual questioning of Juror No. 1 and Juror No. 3 by the court and trial counsel. *Id.* He argued his absence during the court's questioning of Juror Nos. 1 and 3, and the failure to question Juror No. 14 at all, denied him a fair trial. *Id.* He further argued that trial counsel rendered constitutionally ineffective assistance for failing to move for a mistrial, and for failing in closing argument to attack the victim's testimony about a specific assault as "wholly incredible." *Id.*

The Wisconsin Court of Appeals affirmed the circuit court on all grounds. *Id.* Petitioner appealed to the Wisconsin Supreme Court on the same three claims; the court denied his petition for review on October 9, 2018. ECF No. 1 at 3; *State v. Bland*, 921 N.W.2d 503 (Wis. 2018).

### 3.    LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. The federal habeas corpus statute "permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). Importantly, federal habeas review is not available, and federal courts lack jurisdiction over a petition, where "the state court rests its decision on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002) (citing *Stewart v. Smith*, 536 U.S. 856, 860–61 (2002)).

Where a federal habeas court does have jurisdiction, "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* As a result, the Court may grant a writ of habeas corpus only if the state court's decision with respect to that claim was: (1) "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181. The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir.

2006). In Petitioner's case, that would be the Wisconsin Court of Appeals' April 10, 2018 opinion. *See supra* Section 2.

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has

explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

## 4. ANALYSIS

### 4.1 Ground One

In Ground One, Petitioner argues that the state trial court violated his due process rights when it had a pre-trial interaction with a juror at which Petitioner's counsel waived his right to be present. ECF No. 1 at 6–7. Respondent argues that the Wisconsin Court of Appeals' decision applying *United States v. Gagnon*, 470 U.S. 522 (1985), a case with almost identical facts, was neither contrary to nor an unreasonable application of federal law. ECF No. 23 at 15.

Generally speaking, criminal defendants have a constitutional right to presence at a proceeding. "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *Gagnon*, 470 U.S. at 526 (internal citation omitted). "[A] defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge .... [T]he presence of a defendant is a condition of due process to the extent that a fair

and just hearing would be thwarted by his absence, and to that extent only.'" *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934)).

In *Gagnon*, one of jurors during trial noticed a defendant making sketches of the jurors and informed the bailiff of his concerns. *Id.* at 523–24. The trial court decided to conduct an *in camera* questioning of the juror. *Id.* The court requested that defense counsel for the defendant be present during questioning but excluded all other defendants and attorneys. *Id.* Once the trial court assured itself that the juror was willing to continue as an impartial juror, it allowed the trial to continue. *Id.* The *Gagnon* court held that "respondents' rights under the [ ] Due Process Clause were not violated by the in camera discussion with the juror. '[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.' " *Id.* at 526 (quoting *Rushen v. Spain*, 464 U.S. 114, 125–26 (1983) (Stevens, J., concurring in judgment)). The Court further held:

> the presence of the four respondents and their four trial counsel at the in camera discussion was not required to ensure fundamental fairness or a reasonably substantial ... opportunity to defend against the charge. The encounter between the judge, the juror, and Gagnon's lawyer was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the [Due Process Clause]. Respondents could have done nothing had they been at the conference, nor would they have gained anything by attending. Indeed, the presence of Gagnon and the other respondents, their four counsel, and the prosecutor could have been counterproductive. Juror Graham had quietly expressed some concern about the purposes of Gagnon's sketching, and

Case 2:20-cv-00036-JPS   Filed 03/28/23   Page 13 of 24   Document 25

the District Judge sought to explain the situation to the juror. [The Due Process Clause] does not require that all the parties be present when the judge inquires into such a minor occurrence.

*Id.* at 527 (internal citations omitted).

Applying that standard here, the Court finds that the Wisconsin Court of Appeals' decision was a reasonable application of established federal law. In ruling on this issue, the court reasoned:

> Again, applying the principles from *Gagnon*, we conclude that the Juror 3 interaction is a minimal interaction of the sort that *Gagnon* describes: one in which Bland could have done nothing had he been present and one from which he would not have gained anything. Bland speculates that if present, he would have drawn the conclusion that if Juror 3 had insufficient backbone to stand up when asked about convictions during voir dire, he would have insufficient backbone to say honestly if he believed the evidence was insufficient to convict. Besides being merely speculation, Bland's argument ignores the fact that Juror 3 notified the bailiff that there was a problem, returned to court to deal directly with his failure to disclose, faced the admonishment of the judge, and disclosed honestly his history. Bland's speculation about the juror's reticence is not borne out by the record. In light of the whole record, Bland's absence from this interaction did not thwart "a fair and just hearing" and thus did not violate his right to due process.

ECF No. 10-7 at 14–15. The court properly identified the relevant law and applied it to the facts of Petitioner's case. Petitioner has not explained what he would have done had he been present at these proceedings and how his presence would have assisted his defense and contributed to the fairness of his trial. *See Gagnon*, 470 U.S. at 527 (constitutional right to be present not implicated when defendants "could have done nothing had they been at the conference, nor would they have gained anything by attending"). The

Wisconsin Court of Appeals reasonably applied *Gagnon* when it concluded that Petitioner's absence did not violate his constitutional right to be present at critical stages of his trial.

The state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. As such, the Court finds that Ground One does not warrant federal habeas relief.

### 4.2 Ground Two

Petitioner claims in Ground Two that he is entitled to an evidentiary hearing on his claim that trial counsel rendered ineffective assistance when he waived Petitioner's presence for the interaction with Juror No. 3. ECF No. 1 at 7. Respondent argues that the state court's decision with respect to the ineffective assistance of counsel was not contrary to, or an unreasonable application of *Strickland.* ECF No. 23 at 18.

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Petitioner must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from

counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so

burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.*

The Court finds that the Wisconsin Court of Appeals reasonably applied *Strickland.* In analyzing this issue, the court reasoned:

> First, Bland's claims relating to trial counsel's failure to require his presence at the interactions with Juror 1 and Juror 3 are disposed of by our analysis of the above claims. There was no constitutional due process violation as to the juror interactions and the statutory violation was harmless error. It follows that neither could constitute ineffective assistance of counsel because neither could satisfy the prejudice requirement of *Strickland.*

ECF No. 10-7 at 19.

The Court cannot say that all fair-minded jurists would agree that a *Strickland* violation occurred. As discussed above, the Court found the Wisconsin Court of Appeals reasonably concluded that Petitioner's absence for the interaction with Juror No. 3 did not violate his constitutional right to be present at critical stages of his trial. The court then reasonably applied that conclusion to determine that Petitioner could not satisfy the prejudice requirement of *Strickland* when no constitutional due process violation as to juror interactions occurred.

Petitioner states in the petition that he "did not waive his right to appear with counsel when the court met to address issues with Juror No. 3." ECF No. 1 at 7. He states that he "first became aware of the things said by the Court and Juror No. 3 when he received his transcripts after the verdict and sentencing." *Id.* As Respondent points out, however, the record contradicts Petitioner's statement. The circuit court made a finding of fact, supported by the trial record, that Petitioner was informed about

the conference with Juror No. 3. ECF No. 10-4 at 2. Defense counsel stated on the record, in Petitioner's presence, that he had informed Petitioner about the issue with Juror No. 3 both prior to the conference and after it. ECF No. 10-12 at 9, 11, 12. The record is clear that Petitioner was contemporaneously aware of the conversation with Juror No. 3, and he took no issue with it. Petitioner fails to show that that there is a reasonable probability that, but for counsel's alleged error, the result of the trial would have been different. This is not a case where the record only weakly supports the verdict. The State's case included direct evidence of Petitioner's guilt with the victim's testimony and Petitioner's own text messages. The Wisconsin Court of Appeals did not unreasonably apply *Strickland.* For all of these reasons, the Court finds that Ground Two does not warrant federal habeas relief.

### 4.3    Ground Three

In Ground Three, Petitioner claims that trial counsel was ineffective for failing to adequately argue a critical challenge to the victim's credibility. Specifically, he states as his supporting facts:

> Bland stated that there was inappropriate text messages between victim TMM and [A.D.]. At trial, Bland told his lawyer to ask TMM about the content of the text messages to show that they were the same content that Bland sent like Bland stated. The lawyer asked TMM if she exchanged inappropriate text with [A.D.]. She stated "yes" then the lawyer says, "No further questions." If the lawyer would have asked what the texts read, the jury would have heard the same things read off of Bland's phone, supporting Bland's defense that he was trying to make TMM uncomfortable by saying the same things to her that he found in the exchange between the two, because TMM stated to Bland when asked about the texts, "We just talk like that." So Bland stated, "How would you feel if I just talked to you like that?"

ECF No. 1 at 8. Respondent argues that Petitioner failed to raise this issue at any level in the state courts and therefore failed to preserve it for habeas review. ECF No. 23 at 23.

The Court cannot grant the petition unless Petitioner "has exhausted the remedies available in the courts of the State." *See Wilson v. Cromwell*, 58 F.4th 309, 319 (7th Cir. 2023). To fairly present his federal claims in state court, Petitioner must assert them "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in postconviction proceedings." *See id.* This "complete round rule" means that Petitioner must raise his federal claims at each level of the Wisconsin court system, including any level at which review is discretionary instead of mandatory. *See id.*

The Court's analysis requires some "unpacking of the state procedural regime for criminal appeals and postconviction proceedings." *See Garcia v. Cromwell*, 28 F.4th 764, 771 (7th Cir. 2022). The Seventh Circuit has repeatedly stated that "the criminal appeal process in Wisconsin is unusual" and characterized by some as "counterintuitive" complexity. *Carter v. Buesgen*, 10 F.4th 715, 717–18 (7th Cir. 2021); *see also Morales v. Boatwright*, 580 F.3d 653, 656–57 (7th Cir. 2009); *Huusko v. Jenkins*, 556 F.3d 633, 634–35 (7th Cir. 2009). The complexity is largely attributable to the state's decision to "combine[ ] some aspects of direct and collateral review by allowing post-judgment, but pre-appeal, motions to raise matters outside the trial record." *Huusko*, 556 F.3d at 634–35.

After conviction and sentencing, Wisconsin defendants must bring claims of ineffective assistance in motions for postconviction relief under Wis. Stat. § 974.02, which they must file in the trial court. *See Page v. Frank*, 343 F.3d 901, 905–06 (7th Cir. 2003). If the trial court denies the motion, the

defendant must "file[ ] a consolidated appeal of the judgment and the postconviction order" in the state court of appeals. *Garcia,* 28 F.4th at 766 (citing Wis. Stat. § 809.30(2)(h), (j)); *see also Lee-Kendrick v. Eckstein,* 38 F.4th 581, 587 (7th Cir. 2022) ("[A] claim of ineffective assistance of counsel under [Wis. Stat.] § 974.02 is part of a direct appeal rather than a request for collateral review."). If the appeal is unsuccessful, defendants must present their federal claims to the state supreme court in petitions for review to exhaust them. *See Wilson,* 58 F.4th at 319; *Johnson v. Foster,* 786 F.3d 501, 505 (7th Cir. 2015).

If a habeas petitioner has failed to exhaust his federal claims and the opportunity to raise those claims in state court has passed, the petitioner has procedurally defaulted those claims for purposes of federal habeas review. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (federal habeas courts "generally decline to hear any federal claim that was not presented to the state courts consistent with the State's own procedural rules." (alteration adopted)). For procedural default to apply, the state procedural rule that would bar further consideration of the federal claim in state court must be "independent and adequate." *See Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). The state procedural rule is independent "if it does not depend on the merits of the petitioner's claim." *See Flint v. Carr*, 10 F.4th 786, 793 (7th Cir. 2021). "State rules count as adequate if they are firmly established and regularly followed." *Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (per curiam).

Here, Petitioner failed to raise an ineffective assistance of counsel claim based on counsel's failure to cross-examine T.M. in a specific way about text messages. This issue never arose at any level in the state courts. Instead, Petitioner made arguments that trial counsel was deficient because

he failed to attack testimony during *closing arguments* as "wholly incredible" ECF No. 10-7 at 20-21; *see also* ECF No. 10-5 at 33-34. This claim, however, is distinct from his current claim related to counsel's alleged failure to cross examine a witness. As such, Petitioner failed to present Ground Three to the state courts for review. This does not, however, end the Court's procedural default analysis because the Court must ask whether Petitioner could still bring this claim in state court. As discussed below, the Court finds that he cannot.

The Court finds that Petitioner would be unable to raise his Ground Three ineffective assistance of counsel in a collateral motion under Wis. Stat. § 974.06. The Wisconsin Supreme Court has interpreted § 974.06 "to exclude all issues that were or could have been raised in a § 974.02 postconviction motion or appeal, including constitutional issues, unless the defendant provides 'sufficient reason' for not raising the issues in that earlier proceeding." *Page*, 343 F.3d at 906 (quoting *Escalona–Naranjo*, 185 Wis. 2d 168, 181 (1994)). "In an appropriate case, ineffective assistance of postconviction counsel may qualify as a sufficient reason to excuse a procedural default [for purposes of a § 974.06 motion]." *See Garcia*, 28 F.4th at 767 (citing *State v. Romero-Georgana*, 360 Wis. 2d 522, 542 (2014)). But this "gateway to merits review of a defaulted claim carries a heightened pleading burden" and would apply only if Plaintiff provided "factual allegations showing that the defaulted claims were 'clearly stronger' than the issues postconviction counsel chose to present." *See id.* (quoting *Romero-Georgana*, 360 Wis. 2d at 545).

Petitioner has not met this heightened pleading burden. Petitioner makes no claim that his postconviction counsel was ineffective, nor does he claim that the Ground Three ineffective assistance claim related to the

deficient cross examination of witnesses is clearly stronger than the issues postconviction counsel chose to present, and his filings do not suggest that they are. If Petitioner tried to raise his defaulted claims in a § 974.06 motion, the state courts would deny it under *Escalona–Naranjo* and *Romero-Georgana*. These state procedural bars are independent and adequate. *Eckstein*, 38 F.4th at 588–89; *Whyte v. Winkleski*, 34 F.4th 617, 624–25 (7th Cir. 2022); *Garcia*, 28 F.4th at 767, 774–75. As such, the Court finds that Petitioner procedurally defaulted his claim in Ground Three.

A finding of procedural default on a claim would not normally end the Court's analysis. A petitioner may overcome a procedural default by showing in federal court "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. Whether cause exists generally turns on whether the factual or legal basis for the claim "was not reasonably available to counsel," or whether "some interference by officials" made it "impracticable" for counsel to comply with the state procedural rule. *See Moore v. Casperson*, 345 F.3d 474, 486 (7th Cir. 2003). Ineffective assistance of counsel may "constitute cause to set aside a procedural bar." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). Here, however, without any briefing from Petitioner, the Court has no basis to conclude that cause and prejudice exist to excuse the default.[4] As such,

---

[4] The Court recognizes the fact that Petitioner sought to file a reply brief. ECF No. 24. However, as discussed above, the Court has already granted numerous extensions in this case, and it has been pending for over three years. His motion for an extension did not include any explanation of his procedural default or any information showing why cause or prejudice exists to excuse the default. *See id.* The Court has carefully reviewed the record in this case and finds it extremely unlikely that additional briefing would meet the high bar to convince the Court that a miscarriage of justice would result if Petitioner's claim is not heard on the merits. *See Perruquet,* 390 F.3d at 514.

Case 2:20-cv-00036-JPS    Filed 03/28/23    Page 22 of 24    Document 25

the Court is obliged to find that Petitioner fails to overcome the procedural default, and that federal habeas is unavailable because he has procedurally defaulted his claim in Ground Three.

## 5.    CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus, ECF No. 1, will be denied. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted).

When the Court has denied relief on procedural grounds, as the Court does as to certain grounds here, Petitioner must show that jurists of reason would find it debatable both that the "petition states a valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Court discussed above, no reasonable jurists could debate whether the petition has merit, on either substantive or procedural grounds. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Allen Bland's petition for a writ of habeas corpus, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner's motion for an extension of time to file a reply, ECF No. 24, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Allen Bland's petition, ECF No. 1, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.